UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE: | NUMBER

**BOBBY G. BENNETT, SR.** | **02-12080**

DEBTOR | CHAPTER 13

## MEMORANDUM OPINION

### Introduction

Bobby G. Bennett, Sr., the debtor, and Sherry Gatlin Bennett were divorced by judgment dated February 17, 1999. They had been living under a community property regime until their community was dissolved effective June 2, 1998, the date on which Sherry Bennett filed a petition for divorce.[1] Their community still had not been partitioned when Bobby Bennett filed chapter 7 on July 26, 2002. The claims register reflects that Mrs. Bennett is her former husband's principal unsecured creditor.

Sherry Bennett's first effort in this forum to protect her interests in the property of the former community was a complaint filed during the chapter 7 case to declare the debtor's obligations to his former wife non-dischargeable on several grounds. The complaint also sought to revoke several prebankruptcy transfers. The Court granted a default judgment against defendant Tera J. Dixon on April 14, 2003. The plaintiff's claims against Raymond Zummo were resolved by a compromise approved in an April 23, 2003 order.

---

[1] Divorce terminates a community property regime retroactively to the date of the filing of the petition in the action that leads to the judgment of divorce. La. Civil Code arts. 159, 2356.

Bobby Bennett, the sole remaining defendant, responded to the complaint on April 30, 2003 with a counterclaim[2] and objection to Sherry Bennett's proof of claim. Two weeks later, Bobby Bennett converted his liquidation case to a chapter 13 case.[3]

By agreement of the parties, the Court at the October 29, 2003 hearing took evidence concerning the value of 10107 Langston Drive in Denham Springs, Louisiana (referred to by the parties as the "Watson Property.") At the conclusion of the evidence, the Court held that the value of the Watson Property was $66,000.

The parties also stipulated to the value and separate or community status of a collection of firearms. *See* Exhibit Husband 8. The only other issues tried October 29, 2003 were the existence and amount of reimbursement claims of the debtor husband against his former wife.

## Reimbursement Claims

Mr. Bennett claims reimbursement for his separate property allegedly spent for the benefit of the community, even though he did not schedule any reimbursement claims among his assets. He apparently relies on Louisiana Civil Code articles 2365[4] and 2367.[5] Bobby Bennett

---

[2] The debtor actually filed a "reconventional demand," which is a species of pleading in Louisiana state court practice that is analogous to a counterclaim under Fed.R.Civ.P.13 and Fed.R.Bankr.P. 7013.

[3] The court denied an earlier motion by the debtor to dismiss his chapter 7 case, and declines to speculate about whether the chapter 7 trustee's January 10, 2003 complaint objecting to the debtor's discharge (adv. no. 03-1005) played any part in the debtor's decision to convert.

[4] Louisiana Civil Code art. 2365 provides in part:

> If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.

[5] Louisiana Civil Code art. 2367 provides in part:

> If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled one-half of the amount or value that the property had at the time it was used. The liability of

2

admits that as the party seeking to establish the right to reimbursement, he has the burden of proof. *McElwee v. McElwee*, 649 So.2d 975, 978 (La. App. 1st Cir. 1994); *Maginnis v. Maginnis*, 580 So.2d 709, 711 (La. App. 1st Cir.1991), *writ denied*, 588 So.2d 111 (La. 1991); *Talbot v. Talbot*, 864 So.2d 590 (La. 2003) (spouse may rebut presumption of community, and prove separate character of property brought into the community, by preponderance of evidence).

Sherry Bennett does not quarrel with her former husband's claim for reimbursement of $11,985.81, representing half of his post-divorce payments to People's Bank on a mortgage debt secured by the Watson Property. She disputes the other reimbursement claims.

(1) <u>Norwood Reimbursement Claim</u>

The debtor testified that when he divorced Sherry Bennett, the community owed a debt to Cecil Norwood, from whom the debtor had borrowed money over the years. At some point in 1998 (the debtor did not offer evidence of the exact date), Mr. Norwood died. Mr. Bennett testified that, after Norwood's death, he continued to make payments on the debt to Norwood's widow, Norma Norwood. The debtor claims reimbursement for $4,122.59, which is one-half of the total he paid on the Norwood obligation.

The documents admitted into evidence as Husband 5 *in globo* include two "IUO's" written and signed by the debtor. Both also bear the signature of Norma Norwood, but do not indicate the date Mrs. Norwood signed the papers, or the purpose of her signature. Both also purport to have been notarized on January 21, 1999 (and were conspicuously marked "not prepared by notary"), but neither is in authentic form. *See* La. Civ. Code art. 1833 (requirements for authentic acts). The documents apparently were drafted by a layperson,[6] and the addenda on

---

(footnote 5 continued from prior page) the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.

3

each mentioning Cecil Norwood's death and committing to continue payments to his widow were not necessary as a matter of law.[7] Adding a notarial stamp did not confer any special status or dignity on the documents. *Compare* La. Civ. Code art. 1836 (requirements for act under private signature duly acknowledged).

Sherry Bennett argues that the debtor did not prove the Norwood obligation. She characterizes the alleged obligation as an agreement with a value of more than $500, and argues that it is subject to a special standard of proof under La. Civ. Code art. 1846.[8] However, because Mr. Bennett's undertaking to Cecil Norwood was reduced to writing, article 1846, which prescribes the methods of proof of *oral* agreements, is inapplicable. *See Bank of Logansport v. Sewell*, 467 So.2d 1217, 1218 (La. App. 2d Cir. 1985) (construing article 2277(now repealed), predecessor to article 1846).[9] Accordingly, Sherry Bennett's claim that Bobby Bennett did not prove the Norwood obligation is completely without merit as a matter of law.[10]

This conclusion does not resolve the matter. Louisiana Civil Code article 1831 still imposes on Bobby Bennett the burden of proving the agreement, even if Sherry Bennett did not

---

[6] For example, the documents recite that they require monthly payments, but both also provide for payment on demand.

[7] Two documents addressed "to whom it may concern" included in Exhibit Husband 5 *in globo*, and purporting to bear the signature of Norma Norwood, were withdrawn by the debtor, who elected not to call Mrs. Norwood to testify at trial.

[8] La. Civ. Code article 1846:

> When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
>
> If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

[9] The revision comments to article 1846 state that enactment of the article was not intended to change prior law under article 2277.

[10] The decision in *Lakewood Estates Homeowner's Association, Inc. v. Markle*, 847 So.2d 633 (La. App. 4th Cir. 2003), on which Mrs. Bennett relies is irrelevant because it involved an oral agreement.

4

offer any evidence contradicting the debtor's testimony.[11] The Civil Code requires corroboration for an obligation by a source other than the party asserting the obligation, and not resulting from that party's action. *Hilliard v. Yarbrough*, 488 So.2d 1038 (La. App. 2d Cir. 1986); *Pennington Constr., Inc. v. R. A. Eagle Corp.*, 652 So.2d 637 (La. App. 1st Cir. 1995). *See also Kilpatrick v. Kilpatrick*, 660 So.2d 182, 185 (La. App. 2d Cir. 1995), *writ denied*, 664 So.2d 444 (La. 1995) (plaintiff's accountant's compilation of payments were not sufficient to corroborate debt). Besides the IOU's, the only other evidence Mr. Bennett offered to prove the Norwood debt was a ledger sheet he himself prepared purporting to show his payments on the loans.[12] This evidence is inadequate. The debtor could have offered the testimony of Mrs. Norwood to corroborate his claim that he borrowed funds from her late husband. Mr. Bennett did not do so, instead offering unauthenticated hearsay documents in an effort to establish both the existence of the obligation and his alleged payments.

In short, even assuming for the sake of argument that Bobby Bennett is the "one witness" demanded by article 1846, the Court is not persuaded of the existence of the obligation and payments to the Norwoods. The absence of any reference to the related reimbursement claim in the debtor's schedules is especially persuasive. Stated simply, had the debtor believed in the existence of facts supporting his claim on account of the alleged obligation to Norwood, he would have listed that claim as an asset of his bankruptcy estate. The debtor testified he had a claim, yet corroborated his statements only with documents he created and produced, none of

---

[11] La. Civ. Code article 1831 states that a "party who demands performance of an obligation must prove the existence of the obligation."

[12] Sherry Bennett objected to the admission of the ledger sheets as part of Exhibit Husband 5 in globo and the Court sustained that objection. Thus, the ledger sheets are not evidence.

which were shown to have been created contemporaneously with the events they purport to memorialize. The evidence does not prove the obligation. La. Civ. Code art. 1831.

For the same reasons, the debtor cannot now argue that his payments on the Norwood "IOU's" entitle him to a claim or offset against his debt to his former wife. The debtor's schedules contain absolutely no mention of any reimbursement claim against Sherry Bennett. Had the debtor believed in the existence of facts supporting his reimbursement claim on account of the alleged obligation to Norwood, he would have listed that claim as an asset of his bankruptcy estate. His omission of any reference to the reimbursement claim from the schedules leads the Court to doubt the veracity of his claims arising out of the Norwood transactions. The omission is underscored by the lack of independent corroboration of the alleged payments by an independent witness such as Norma Norwood, or documents created by or at the insistence of someone other than the debtor, who alone would stand to profit from a ruling in favor of the estate on the Norwood reimbursement claim. *See Kilpatrick,* 660 So.2d at 185-6.

Moreover, debtors have a duty under 11 U.S.C. §521(1) to "disclose all assets, *including contingent and unliquidated claims.*" *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis in original). As a result, they may be judicially estopped from pursuing claims not disclosed in the debtor's schedules or elsewhere during the bankruptcy proceedings. *Id*. At 208-9. *See also Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during bankruptcy, but fails . . . to identify the cause of action as an asset.") The evidence revealed that when he filed bankruptcy, the debtor had enough facts to establish the Norwood debt and a reimbursement claim against Sherry Bennett for the payments on that debt.

He failed to disclose those claims in his schedules, and because of that is now barred from asserting the claims.

### (2)  Debtor's Claim for Reimbursement of Inherited Funds

Mr. Bennett's mother died during the Bennetts' marriage.  As the sole heir of Louise Bennett, Bobby Bennett was put into possession of all the succession property, including a condominium in Baton Rouge and miscellaneous household goods.  *See* November 17, 1992 Judgment of Possession in "Matter of the Succession of Louise Bennett," no. 57327 in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, admitted into evidence as part of Exhibit Husband 6 *in globo*.  The proceeds of the condominium sale were the debtor's separate property.  La. Civ. Code art. 2341.  He testified, but without corroboration, that he spent the money improving the community's immovable property in Chipola (sometimes referred to as the "Greensburg property") and Watson.  He stated that he used about $6,090 of the condominium sale proceeds to improve the Watson property, and spent about $2,210 digging and stocking a pond, and building a dock, on the Chipola property.

Sherry Bennett argues that her former husband has not proven his claim.  She also apparently argues in the alternative that Bobby Bennett commingled the proceeds of the inherited assets with community funds, and therefore is not entitled to reimbursement.

Mr. Bennett urges the Court to accept his testimony as correct because Sherry Bennett did not contradict it.  However, the Court need not accept a party's self-serving testimony simply because it is unopposed.  *Lerch v. Commissioner of Internal Revenue Service*, 877 F.2d 624, 632 (7th Cir. 1989) (court can dismiss self-serving testimony, even if it is not contradicted, when the testimony is unreasonable or questionable).  The Court also doubts the veracity of Mr. Bennett's testimony in view of the significant and glaring misstatements on his schedules, and his

7

fabrication of evidence to support the alleged reimbursement claims. The debtor's omission of any reference to reimbursement claims already has been discussed. More startling is the debtor's scheduling of a $20,000 mortgage debt to Raymond Zummo, who admitted at trial that Bobby Bennett signed an IOU for $20,000, even though Zummo had not loaned the debtor $20,000. Zummo also signed several receipts prepared by Mr. Bennett, even though Bennett did not make the payments to Zummo that the receipts purported to reflect. *See* Exhibits Wife 1 and 2.

The Court concludes that the documents relating to the Zummo claim were created by the debtor to deceive his opponent and the Court concerning the validity of that claim, so that he could use it in support of his reimbursement claim. The debtor's actions weigh heavily against giving any credibility to any of his evidence that was not corroborated by independent, disinterested persons and documents created by persons other than Mr. Bennett.

The debtor testified that the construction project at the Watson property took place in 1997 and 1998, five to six years after he inherited the money from his mother's estate. He admitted on direct examination that he could not recall how much of the inherited funds he spent by check and how much in cash.[13] The debtor also admitted that he had no documentation to confirm his alleged expenditure of $6,089.55 on fill for the Watson property. He finally admitted on cross examination (but only after being impeached with deposition testimony) that he did not know of any documents showing how he spent the funds he inherited in 1992.

Finally, the debtor was impeached on cross examination with deposition testimony in which he stated that he had deposited the proceeds of the inherited property in the family bank

---

[13] The Court excluded as hearsay a number of receipts Bobby Bennett offered to corroborate the construction expenditures. Even if the receipts were admissible, many are dated as early as 1993, long before the construction project started at the Watson property, according to Bennett. In any event, the debtor also admitted on direct examination that he could not identify which of the receipts related to expenditures made from his inheritance.

8

account. Funds from several different sources, including disability payments, Social Security payments to several members of the family and his wife's earnings, were deposited in the same account. Merely depositing separate funds into a joint family checking account containing community funds will not necessarily lead to a determination that the funds have been commingled and therefore are all community property, unless the funds have been commingled indiscriminately so that they cannot be identified or differentiated from the community funds. *Curtis v. Curtis*, 403 So.2d 56, 59-60 (La. 1981). The Louisiana Supreme Court recently considered the issue of commingling of funds, writing that "[u]ntangling the web of separate and community interests requires tracing the interests involved to their original identities which is strictly a matter of proof." *Talbot*, 864 So2d. at 602. The court held that "[o]nly where separate funds can be traced with sufficient certainty will a spouse be able to satisfy his or her burden of proof." *Id*. (citations omitted).

Here the debtor did not make any attempt to trace the funds, could not account for them, and did not offer any evidence to link deposits of allegedly separate property funds to payments that could be reimbursable. Mr. Bennett offered no evidence of deposits or withdrawals – no evidence of account transactions at all, much less evidence of the sort needed to connect the deposit of allegedly separate funds with the expenditures on which the debtor's reimbursement claim rests. *Compare Mertens v. Mertens*, 688 So.2d 1148, 1154-55 (La. App. 3d Cir. 1996), *writ denied*, 685 So.2d 123 (La. 1997) (no commingling found where spouse proved deposit of separate funds into community account to pay community tax debt and issuance of check in payment of tax debt within a sort time); *Ecroyd v. Ecroyd*, 682 So.2d 788, 794 (La. App. 3d Cir. 1996), *writ granted, cause remanded by*, 706 So.2d 440 (La. App. 3d Cir. 1997). In *Ecroyd*, the wife was held to have sufficiently traced the disposition of her funds deposited in the community

9

account, where transactions with separate funds took place over a limited three week period, and account transactions involving community property during the period were negligible in comparison with transactions involving the wife's separate funds. Thus, the commingling did not result in loss of separate status of her funds.

In contrast, Bobby Bennett offered insufficient proof of the identity of the alleged separate funds to satisfy the *Talbot* standard. He produced no documents, and made no effort to trace the inflow and outgo of his allegedly separate money. Without that proof, the Court cannot find the payments debtor claims were traced to his separate funds in the Bennetts' account. Accordingly, even if the debtor were able to link the expenditures to either the Chipola or Watson properties, his failure to introduce evidence identifying the source and disposition of the funds after depositing them in the family checking account compels the conclusion that the funds were so commingled that they lost their status as Bobby Bennett's separate property.

### (3) Debtor's Claim for Reimbursement of Pre-marriage Funds

Bobby Bennett also claims to have contributed $6,500 to the marriage from a personal bank account he maintained before his marriage, and from a debt his brother owed him prior to the marriage. Neither amount was corroborated by either independent testimony or documents. Additionally, the debtor admitted on cross-examination that he did not have any bank records to corroborate the existence of a bank account before his marriage, or the amount on deposit at his marriage if he did have an account. The debtor did not introduce any independent evidence of his brother's payment, or the disposition of the funds allegedly repaid.

Mr. Bennett also claims reimbursement for $3,300 he spent from money his brother owed him on a debt incurred before his marriage to Sherry Bennett. Although the debtor insisted that he deposited the funds in an account at American Bank, he could only assume which of the two

10

accounts he maintained at the time was the correct account, and he offered no records to support his claim in any case. The debtor also admitted on cross-examination that he could not trace the $3,300 into the Chipola property.

The Court declines to award any reimbursement for separate funds the debtor allegedly used to purchase the Chipola property. Bobby Bennett claimed reimbursement for separate funds (comprised of pre-marriage savings and his brother's payment of a debt) that he insisted he spent to acquire the Chipola property in 1975. However, he acknowledged on cross-examination that he had no documents showing a transfer of funds to purchase the property. Mr. Bennett on cross-examination also reviewed a collateral mortgage in the amount of $5,200 in favor of Clinton Bank & Trust Company dated May 1975, the date on which he purchased the property for that amount. *See* Exhibits Wife 4, Husband 7. Although the debtor insisted that he used his own money to buy the property, the debtor's testimony was that the bank would only make a loan to him after he deposited personal funds in the bank.[14] In fact, in later testimony Mr. Bennett admitted paying "notes" on the property to Clinton Bank, which is consistent with a loan relationship as reflected in Exhibit Wife 4.

The Court finds the debtor's uncorroborated testimony not credible regarding this claim. In any case, the independent documentary evidence from the public record is not consistent with the debtor's recollection of the transaction. Accordingly, the debtor has not proven entitlement to a reimbursement claim for any separate funds allegedly used to acquire the Chipola property.[15]

---

[14] The Court construes that testimony as not supporting the debtor's claim that he used personal funds to make the acquisition, merely that the bank required a depository or customer relationship with Mr. Bennett before it would make a loan.

[15] The debtor did not make any showing that the funds were used for any purposes resulting in a reimbursement claim under Civil Code articles 2365 and 2367.

11

(4) <u>Debtor's Claim for Reimbursement of Worker's Compensation Settlements</u>

The debtor testified that he received settlements from Jacobs/Wiese Constructors, Inc. and Bengal Construction Company during the existence of the community. Bobby Bennett now claims reimbursement for part of the proceeds of those settlements spent improving the Chipola and Watson properties.

Personal injury claims, including worker's compensation claims, and therefore the settlements of those claims, are in part separate and in part community. *See* La. Civ. Code art. 2344;[16] *Lee v. Lee*, 727 So.2d 622 (La. App. 1st Cir. 1998). The debtor testified regarding the net total amounts of each settlement, but failed to offer any evidence specifying the amounts of each settlement attributable to losses suffered by the community or separate losses, such as pain and suffering.[17] The judgments approving the settlements, to which the debtor referred in his testimony, were not even offered into evidence. Mr. Bennett therefore did not prove the amount of the settlements that were his separate property, and accordingly is not entitled to reimbursement for those sums.

Moreover, like other aspects of his reimbursement claims, the debtor admitted on cross-examination that he had no bank statements, checks or other documents to corroborate that proceeds of either worker's compensation settlement were used to improve the Chipola or Watson properties. He also acknowledged that he thought he deposited the Jacobs/Wiese settlement check in the family bank account. The debtor's failure to trace the commingled funds

---

[16] La. Civ. Code art. 2344: Damages due to personal injuries sustained during the existence of the community by a spouse are separate property. Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.

[17] The debtor attempted to testify that his attorneys told him part of the settlements were for future medications and pain and suffering, but the Court excluded the testimony on Sherry Bennett's objection.

from the Jacobs/Wiese settlement compels the conclusion that they are community.  *Compare Ramsey v. Ramsey*, 682 So.2d 797, 800 (La. App. 3d Cir. 1996) (separate portion of personal injury settlement deposited in investment account separate from other community property of spouses held not commingled, and therefore did not lose its separate character).

(5)  Summary of Reimbursement Claims Awarded

The debtor is allowed a reimbursement claim for post-divorce interest payments to People's Bank in the amount of $11,985.81.  All other reimbursement claims made by the debtor are disallowed.

(6)  Remaining Issues in the Adversary Proceeding

Many of the issues in Sherry Bennett's adversary proceeding against the debtor were resolved prior to the hearing.  The plaintiff compromised with defendant Raymond Zummo, and obtained judgment by default against defendant Tera J. Dixon.  The plaintiff's request for a judgment declaring her claims against the debtor nondichargeable under several subsections of 11 U.S.C. §523(a) is moot as a result of the conversion of the case to a chapter 13 proceeding.  The only other relief the complaint seeks seems to be disallowance of part of the claims of Sherry Bennett, which are addressed elsewhere in this opinion.[18]

Accordingly, adversary proceeding 02-1111 will be dismissed as moot by separate judgment.

Baton Rouge, Louisiana, March 25, 2004.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[18]  In addition to being incorrectly designated as a "reconventional demand," the debtor's pleading does not clearly identify the nature of the counterclaim.  The Court construes the counterclaim as seeking only disallowance of Sherry Bennett's claim in the related chapter 13 case.